**UNITED STATES of America, Appellant,**

v.

**Luis TEJEDA, Defendant,**

Ramon Frias, Defendant–Appellee.

Docket No. 97–1523.

United States Court of Appeals,
Second Circuit.

Argued April 28, 1998.

Decided June 1, 1998.

Gregory L. Waples, Assistant United States Attorney, Burlington, VT (Charles R. Tetzlaff, United States Attorney; David V. Kirby, Chief, Criminal Division), for Appellant.

Mark A. Kaplan, Burlington, VT, for Defendant–Appellee.

Before: VAN GRAAFEILAND, MESKILL, and CABRANES, Circuit Judges.

PER CURIAM:

The government appeals from a sentence entered by the United States District Court for the District of Vermont (William K. Sessions, *Judge*) after defendant-appellee Ramon Frias pleaded guilty to distributing cocaine. The sentence imposed consisted of 51 months of imprisonment, to be followed by six years of supervised release. The government contends that the district court abused its discretion in downwardly departing from the sentencing range prescribed by the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). We agree; accordingly, we vacate the judgment of the district court and remand for resentencing.

I.

Defendants Tejeda and Frias were apprehended by Drug Enforcement Administration ("DEA") Task Force agents after selling cocaine to a local Vermont drug dealer who had agreed to cooperate with the DEA. Frias pleaded guilty to distributing cocaine. His criminal history prior to the instant offense consisted of two misdemeanor convictions and two felony convictions: one for a crime of violence (assault with a dangerous weapon) and one for a controlled substance offense (possession of cocaine with intent to distribute). Both felony convictions resulted in sentences of 90 days' imprisonment.

Frias's criminal history placed him in Criminal History Category V, but because of his two prior convictions for violent or drug-related felonies, he qualified as a career offender pursuant to U.S.S.G. § 4B1.1. Section 4B1.1 mandated that his offense level be increased to 34 and that his Criminal History Category be increased from V to VI. After adjusting defendant's offense level downward by three levels for acceptance of responsibility, the Presentence Report advised that Frias's career offender guideline range was 188 to 235 months' imprisonment. Frias moved for downward departure at sentencing based on (1) extraordinary family circumstances, (2) extraordinary rehabilitation, and (3) significant overstatement of the seriousness of his criminal history.

The district court rejected departure on the bases of extraordinary family circumstances and extraordinary rehabilitation. However, the district court did grant a downward departure, pursuant to U.S.S.G. § 4A1.3, on the grounds that Frias's career offender status significantly overstated the seriousness of his criminal history. The judge offered five reasons for his conclusion that career offender status was inappropriate for defendant Frias:

(1) The lenience of defendant's prior sentences. At sentencing, the judge explained:

> I think career offender involves situations in which persons ... do a substantial period of imprisonment, afford the corrections system, the Bureau of Prisons [time] to work with this person, and then have that person reject that and offend again, and go back again for a substantial period of time, and again fail, so that the system has afforded the defendant an opportunity to rehabilitate himself, and it has not worked.... I think that's what ... Congress was thinking about, somebody who has been incarcerated a number of times for significant periods of time, and just has not received a message. So has this defendant received a message? [The] message that this defendant has received, quite frankly, is just the opposite of the message which I have just described. He is convicted of a felony drug offense, and he receives 90 days in jail. That's it. That's no programming. That's just 90 days in jail. Five years go by, he is involved in a number of incidents. He receives another 90 days to serve.... He has not received any kind of substantial programming within a Bureau of Prisons environment. He has been told just the opposite, that he is not a career offender; that in fact he has been treated leniently for all of his adult life, at least by the criminal justice system. So I don't think that this is what Congress intended.

(2) The lighter sentence (27 months) received by co-defendant Tejeda.

(3) The relatively small quantity of drugs involved in the instant offense (100–200 grams).

(4) The defendant's "stable family relationship."

(5) The defendant's eligibility for deportation by the Immigration & Naturalization Service ("INS") after he is released from custody.

The district court proceeded to sentence Frias, within the range that would have been appropriate absent the career offender classification, to 51 months' imprisonment (based on offense level 17 and Criminal History Category V).

## II.

■ We review a district court's departure from the Guidelines for abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996). The first three grounds for downward departure cited by the district court are impermissible as a matter of law. The remaining two grounds for downward departure do not remove the instant case from the heartland of typical cases considered by the United States Sentencing Commission ("Sentencing Commission" or "Commission") in drafting the Guidelines, and therefore the district court erred in relying on them.

■ (1) *Prior Lenient Sentences:* The district court explained at length that, in its view, Congress intended to reserve career offender status for those offenders who had been incarcerated for a substantial period of time and had thus afforded the penal system an opportunity to rehabilitate them. By this understanding, a defendant who had the benefit of prior lenient sentences would not be eligible for career offender status. However, we agree with the Court of Appeals for the Eleventh Circuit that a sentencing judge may not downwardly depart based on a prior lenient sentence. *See United States v. Phillips,* 120 F.3d 227, 232 (11th Cir.1997). As that court reasoned, reliance on such a factor would conflict with U.S.S.G. § 4A1.3, which states that a prior lenient sentence for a serious offense may warrant an *upward* departure. *See id.;* U.S.S.G. § 4A1.3. In light of this language in the Guidelines, a defendant who has had the benefit of prior lenient treatment is not entitled to continued lenient treatment.

■ (2) *Length of Co-defendant's Sentence:* It is well settled that "[d]isparity between the sentences of individual co-defendants ... is not a proper basis" for downward departure. *United States v. Minicone,* 960 F.2d 1099, 1112 (2d Cir.), *cert. denied,* 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992) *and* 506 U.S. 869, 113 S.Ct. 199, 121 L.Ed.2d 142 (1992). This is in keeping with Congress's objective, in adopting the Sentencing Reform Act of 1984, of eliminating disparity on a *national* level; to depart based on a co-defendant's lighter sentence is to introduce disparity between "defendant's sentence and that of all similarly situated defendants throughout the country." *United States v. Joyner,* 924 F.2d 454, 460–61 (2d Cir.1991). The district court erred in relying on this factor as a basis for downward departure.

■ (3) *Small Quantity of Drugs:* We have held that a "small quantity of controlled substance is not a basis for downward departure from the career offender Guidelines range." *United States v. Richardson,* 923 F.2d 13, 16 (2d Cir.1991). "Meager quantity was adequately considered by the Sentencing Commission" in formulating the Guidelines, and it is thus error to rely on this factor as a reason to downwardly depart. *Id.*

■ (4) *A Stable Family:* Family circumstances are not a forbidden basis for a downward departure, but they "are a discouraged basis for departure because the Commission has deemed them to be not generally relevant." *United States v. Galante,* 111 F.3d 1029, 1034 (2d Cir.1997); *see also* U.S.S.G. § 5H1.6. "Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Johnson,* 964 F.2d 124, 128 (2d Cir.1992). For this reason, a district court may depart downward on this basis only if the "hardship in a particular case is exceptional." *Galante,* 111 F.3d at 1034.

■ The district court noted defendant's stable family as one reason for its decision to downwardly depart. However, the existence of a stable family (a wife and two children)—

something that is by no means extraordinary—does not satisfy the "exceptional hardship" criterion established by our precedents. *Cf., e.g., Johnson,* 964 F.2d at 129 (upholding downward departure where defendant was solely responsible for upbringing of three children and one grandchild); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991) (holding extraordinary family circumstances existed where disabled father relied on defendant to get him in and out of wheelchair and defendant worked two jobs to provide for his wife, two daughters, disabled father, and paternal grandmother).

 (5) *Potential Deportation:* Although U.S.S.G. § 5H1.10 forbids departure based on a defendant's national origin, we have held that, in some circumstances, a defendant's status as an alien may serve as a basis for downward departure. *See* U.S.S.G. § 5H1.10; *United States v. Restrepo,* 999 F.2d 640, 644 (2d Cir.), *cert. denied,* 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993). We treat alienage as a characteristic that is not ordinarily relevant for sentencing purposes, but "pertinent collateral consequences of a defendant's alienage" may "serve as a valid basis for departure if those consequences were extraordinary in nature or degree." *Restrepo,* 999 F.2d at 644. Deportation alone does not constitute an extraordinary consequence that would justify a downward departure. *See id.* at 646–47. In discussing deportation, the district court said only, "in the final category ... there is a detainer that has been lodged by INS, that once [Frias] is released from custody, he will be deported or at least face deportation." There was no mention of any extraordinary consequence of defendant's alienage that would serve as a valid basis for downward departure, and none appears in the record.

### III.

In sum, the district court incorrectly applied the Guidelines by downwardly departing based on three impermissible factors (previous lenient sentences, length of co-defendant's sentence, and small amount of controlled substance) and two factors already considered by the Sentencing Commission in establishing the Guidelines range (family circumstances and deportation). We cannot conclude that the district court's error was harmless inasmuch as no permissible ground for a downward departure remains. In light of the foregoing, we conclude that the district court abused its discretion; accordingly, we vacate the judgment and remand for resentencing.